**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF IOWA**

In the Matter of:

Richard Timothy Anderson,
Ethel M. Anderson,                                              Case No.  09-04486-als7

                Debtors                      Chapter 7


**MEMORANDUM OF DECISION
(date entered on docket: April 13, 2010)**

      An evidentiary hearing was conducted on February 18, 2010 related to the Debtors' Motion for Sanctions Against GE Money Bank (JC Penney) ("GEMB"). Michael L. Jankins represented Richard and Ethel Anderson ("Debtors"). Michael Sherwood Dove appeared for Recovery Management Systems Corporation ("RMSC"). The Debtors assert that action was taken by GE Money Bank (JC Penney) ("GEMB") in violation of the provisions of 11 U.S.C. section 362(a). RMSC responded to the Debtors' Motion, and appeared at the hearing as the agent for GEMB asserting that no stay violation had occurred. No appearance or filing was made by GEMB to the Debtors' Motion. At the conclusion of the hearing a briefing deadline was established. The matter is now considered fully submitted.

      The court has jurisdiction of these matters pursuant to 28 U.S.C. sections 157(b)(1) and 1334. Upon review of the pleadings, evidence, briefs and arguments of counsel, the following findings and conclusions of law are entered by the Court pursuant to Federal Rules of Bankruptcy Procedure 7052 and 9014.

FACTS

Richard Timothy Anderson, and his wife, Ethel M. Anderson, filed a voluntary chapter 7 proceeding on September 16, 2009. No other names are listed for either Debtor on the petition. Schedule F of the filing included an obligation owing to GEMB for a JC Penney credit card account ending in 3301[1] with a stated balance of $629.00. Notice of the bankruptcy filing was provided to this creditor at JC Penney-GE Money Bank, Attn: Bankruptcy Dept, PO Box 103104, Roswell GA 30076. On October 15, 2009, RMSC, on behalf of GEMB, filed a Request for Notice pursuant to Bankruptcy Rule 2002.

A series of mailings were sent to Richard T. Anderson ("Debtor") beginning on November 9, 2009. The first mailing was a Notice to Customer of Right to Cure Default which was addressed to Richard T. Anderson from a JC Penney post office box in El Paso, Texas. Utilizing the address from the bankruptcy filing, and the Texas post office box, Debtors' counsel responded with written verification of the bankruptcy filing on behalf of his clients. On November 22, 2009, JC Penney sent a letter inquiry directly to Richard T. Anderson to provide bankruptcy information. Debtor's counsel returned the form letter with the requested documentation on November 30, 2009. A billing statement with an outstanding balance of $736.59 which requested a minimum payment of $237.00 was directed to Richard T. Anderson in December 2009. Encore Receivable Management ("Encore") contacted the Debtor, Richard T. Anderson, on December 8, 2009, for payment of the JC Penney Credit Card account. Debtors' counsel responded with written verification of the Debtors' bankruptcy filing on December 17, 2009.

---

[1] The account number in the exhibits and at the hearing refer to an account ending in 4330. Neither party appears to dispute that actions regarding this account are the bases for the Debtors' Motion.

During this same month two telephone calls were placed to Richard T. Anderson in an attempt to collect the obligation owing to JC Penney. During each conversation, the Debtor indicated that he had filed bankruptcy.

On December 17, 2009, this Motion was filed alleging violation of the automatic stay. On December 23, 2009, Debtors' counsel served the Notice and Order regarding Hearing on the Motion for Sanctions for Violation of the Automatic Stay to three separate addresses for GEMB and to RMSC. On December 29, 2009, Debtors' discharge entered. On January 6, 2010, GEMB sent another request for bankruptcy information to Richard T. Anderson.

Mr. M. Ronnie Cohen, Senior Operations Officer of RMSC ("Cohen"), is responsible for all aspects of bankruptcy procedures for RMSC. Upon receipt of a Notice of Bankruptcy Filing, his company undertakes certain actions on behalf of GEMB pursuant to a servicing agreement. His testimony included a lengthy rendition of the process that occurs from the time a bankruptcy notification is received, through its continued monitoring and case closing. Upon receipt of a Notice of Bankruptcy Filing, a "match" is attempted by comparing the bankruptcy filing information with data stored in the GEMB mainframe computer. Although RMSC has authorized user rights to this mainframe computer, it does not have control, or direct knowledge, as to what content is entered into the system related to an individual account. This initial match is based upon name, address, birth date, and social security number. Using the information from the Andersons' Notice of Bankruptcy Filing, the system reached an "inconclusive" result. The same information was then submitted into a database maintained by RMSC in which sophisticated algorithms were utilized in its "search-and-locate process." Under this

process, a match was located for Ethel Anderson. Richard T. Anderson was a match on the following four criteria: name, address, date of birth and joint account holder. However, the social security number maintained in the system did not match the social security number stated on the bankruptcy notice.

In situations where a match is not conclusive, a manual review is conducted by an RMSC employee to attempt to verify whether an individual can be matched based upon demographic or external information that can be obtained. "[E]ventually, any document that needs the attention of a *human being* is brought in front of a paralegal or a clerk that is trained to deal with it." Transcript of Record at 85:3-5 (emphasis added). The letters sent by Debtor's counsel were reviewed by employees at RMSC, and this resulted in an additional letter that went out to Richard T. Anderson requesting the information on his bankruptcy filing. RMSC contends that the bankruptcy information provided was more of the same information already received which did not correspond to the data contained in the computerized system. Cohen stated that the "Richard T. Anderson who's sitting here in court, we knew he'd filed bankruptcy; we received the notice." Transcript of Record at 79:14-15. RMSC admits that it did not attempt to contact Debtors' counsel to identify or attempt to resolve the continuing problem with "matching" this account.

RMSC asserts that it believes that another Richard T. Anderson is responsible for the credit card at issue, and consequently no violation of the stay has occurred. This conclusion relies upon the use of "Senior" after the Debtor's name. Cohen opined that in many instances when a joint account-single filer is identified it is due to similar names across generations, and that in his experience, inability to provide information matching the system data is an attempt to "hide" from creditor contact. Cohen has no information

or explanation for why the social security number that appears in the system of GEMB is not that of the Debtor. The original application cannot be obtained due to its age or the fact that it may never have existed.

The Debtor, Richard T. Anderson, testified that his legal name does not contain the moniker "Senior"; that he utilized the social security number appearing on his bankruptcy petition to open his JC Penney account in 1985; and that no one other than he and his wife made charges and payments on the JC Penney account. The Debtor has a son named Richard T. Anderson, Junior. He has not lived at the Debtors' address for twenty years; he does not receive mail at this parents' home; he has never held a JC Penney account.

At the conclusion of the hearing, the Debtor's counsel submitted an attorney fee statement in the amount of $2,420.00. The total billing was orally amended to include billing for the entire hearing which increased the total billing time by 1.5 hours. With this revision, the total hours submitted for attorney time are 13.6 for total fees requested in the amount of $2,720.00.

DISCUSSION

At the hearing, Debtor's counsel objected to the testimony of Cohen related to his authority to appear on behalf of GEMB. This issue is the subject of inconsistent responses in the record. Upon a question by the Court inquiring as to whether the service agreement permitted his testimony as to actions taken directly by GEMB or JC Penney, Cohen responded, "I don't believe it does . . . ." Transcript of Record at 73:12-17. Prior to review of the transcript, the Court believed the witness had indicated he did have such authority. When later asked again about his authority, the witness indicated he could

respond under the provisions of the service agreement. Transcript of Record at 75:17-25 to 76:8. The substance of Cohen's testimony regarding the systems utilized by RMSC is informative, but not relevant to a determination of whether GEMB violated the stay. Both Debtors' counsel, and the Court, questioned why RMSC appeared and participated in this proceeding. There has been no allegation that RMSC violated the automatic stay. Statements on the record, and in the brief filed on behalf of RMSC, indicate that RMSC does not believe a stay violation occurred. This opinion is not evidence which is dispositive of the pending Motion.

      A Motion for Sanctions for Violation of the Automatic Stay is a contested matter pursuant to Bankruptcy Rule 9014. The rule provides in part: "relief shall be requested by motion, and reasonable notice and opportunity for hearing shall be afforded the *party* against whom relief is sought." Bankruptcy Rule 9014(a) (emphasis added). Black's Law Dictionary defines a party as: "a technical word having a precise meaning in legal parlance; it refers to those by or against whom a legal suit is brought . . . all others who may be affected by the suit, indirectly or consequently, are persons interested but not parties." Black's Law Dictionary (5th ed. 1979). RMSC is not a party to the Debtors' Motion.

      The automatic stay becomes effective upon the filing of a bankruptcy petition and precludes any action by any creditor to attempt to enforce collection of a pre-petition obligation. 11 U.S.C. § 362(a) (2009). The automatic stay is a fundamental legal right afforded to debtors upon the filing of a bankruptcy to provide a "breathing spell" from continuing collection actions. See Farley v. Henson, 2 F.3d 273, 274 (8th Cir. 1993). The stay is broadly applied to prevent prohibited actions. See In re Knaus, 889 F.2d 773,

774 (8th Cir. 1989). Courts must display a "certain rigor in reacting to violations of the automatic stay" in order to maintain its effectiveness. In re Vierkant, 240 B.R. 317, 321 (B.A.P. 8th Cir. 1999).

The initial inquiry that must be answered is whether the alleged violation is willful. To be willful a creditor must take deliberate action "with the knowledge" that a bankruptcy petition has been filed. See In re Knaus, 889 F.2d at 775; In re Cullen, 329 B.R. 52, 57 (Bankr. N.D. Iowa 2005).

A willful violation does not require a finding of intent. In re Campion, 294 B.R. 313, 316 (B.A.P. 9th Cir. 2003). "[A]n act is deemed to be a willful violation if the violator knew of the automatic stay and intentionally committed the act *regardless of whether the violator specifically intended to violate the stay.*" In re Preston, 395 B.R. 658, 663 (Bankr. W.D. Mo. 2008) (citing Jove Eng'g v. IRS, 92 F.3d 1539, 1555 (11th Cir. 1996)) (emphasis added). Reliance upon a computer system and its data does not justify, nor excuse, actions taken in violation of the stay. See In re Wingard, 382 B.R. 892, 902 (Bankr. W.D. Pa. 2008) (holding that the creditor's "the computer-did-it defense" was legally insufficient); In re McCormack, 203 B.R. 521, 524 (Bankr. D. N.H. 1996) (explaining that people are still responsible for the information contained in computers and its proper processing).

Based upon the evidence, GEMB engaged in a willful violation of the automatic stay. As a result of this finding, the appropriate remedies provided for under 11 U.S.C. section 362(k) must be evaluated.

"[A]n individual that is injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorneys' fees, and, in

appropriate circumstances, may recover punitive damages." 11 U.S.C. § 362(k)(1) (2009). If the elements of a willful violation are met, "the court must award compensatory damages then decide whether punitive damages are appropriate." Rosengren v. GMAC Mortgage Corp., No. 00-971, 2001 U.S. Dist. LEXIS 13119, at *6-7 (D. Minn. Aug. 7, 2001). "'[I]njury' is broadly defined as being a 'violation of another's legal right, for which the law provides a remedy.'" In re Jackson, 309 B.R. 33, 37-38 (Bankr. W.D. Mo. 2004).

Courts are divided as to whether emotional damages are compensable as actual damages pursuant to section 362(k). See generally Aiello v. Providian Fin. Corp., 239 F.3d 876, 881 (7th Cir. 2001) (holding that actual damages do not include damages for purely emotional injury absent a financial component); Fleet Mortgage Group v. Kaneb, 196 F.3d 265, 269 (1st Cir. 1999) (holding that emotional damages qualify as actual damages); United States v. Harchar, 331 B.R. 720, 726-28 (N.D. Ohio 2005) (discussing in detail the split among the circuits on the question of emotional damages).

"There … appears to be an 'emerging consensus' that emotional distress damages may be recovered in an award of actual damages under section 362(k)(1)." 3-362 Collier on Bankruptcy P 362.11 (citing In re Dawson, 390 F.3d 1139, 1149 (9th Cir. 2004); Fleet Mortgage Group, 196 F.3d at 269). See also In re Whitmarsh, 383 B.R. 735 (Bankr. D. Neb. 2008); In re Cullen, 329 B.R. 52; In re Mann, No. 09-00507, 2009 WL 3007912 (Bankr. N.D. Iowa 2009); In re Mau, No. 09-00929, 2009 WL 3007913 (Bankr. N.D. Iowa 2009).

The Bankruptcy Appellate Panel for the Eighth Circuit has held that "[e]motional distress damages for automatic stay violations are available if the individual debtor puts

on clear evidence establishing that significant harm occurred as a result of the violation."

L'Heureux v. Homecomings Fin. Network, 322 B.R. 407, 411 (B.A.P. 8th Cir. 2005).

The Ninth Circuit has held that a debtor may recover "actual damages" for emotional distress and stated:

> Reading the legislative history as a whole, we are convinced that Congress was concerned not only with financial loss, but also – at least in part – with the emotional and psychological toll that a violation of a stay can exact from an individual. Because Congress meant for the automatic stay to protect more than financial interests, it makes sense to conclude that harm done to those non-financial interests by a violation are cognizable as "actual damages." We conclude, then, that the "actual damages" that may be recovered by an individual who is injured by a willful violation of the automatic stay . . . include damages for emotional distress.

In re Dawson, 390 F. 3d at 1148. Similarly, the First Circuit has held "emotional damages qualify as 'actual damages' under section 362(h)." Fleet Mortgage Group, 196 F.3d at 269 (interpreting prior version of 362(k)).

As a result of the continued collection efforts by GEMB, the Debtor stated that he was anxious, irritable and had difficulty sleeping. Although he did not seek medical treatment, he had increased symptoms related to a condition identified as "essential tremors" which is a precursor to Parkinson's disease. The Debtor further stated that he thought about paying off the credit card to stop the collection activity. The Debtor's testimony regarding his physical and emotional distress resulting from the conduct of GEMB is credible and establishes the basis for an award of actual damages in the amount of $1,000. Attorney fees are awarded in the amount of $2,270.

An award of punitive damages is appropriate in circumstances in which there is intentional and egregious conduct. In re Ketelsen, 880 F.2d 990, 993 (8th Cir. 1989). Consideration may be given to "the nature of the creditor's conduct, the nature and extent

of harm to the debtor, the creditor's ability to pay damages, the level of sophistication of the creditor, the creditor's motives, and any provocation by the debtor." In re Shade, 261 B.R. 213, 216 (Bankr. C.D. Ill. 2001) (citing In re Flack, 239 B.R. 155, 163 (Bankr. S.D. Ohio 1998); In re Klein, 226 B.R. 542, 545 (Bankr. D. N.J. 1998); In re Wills, 226 B.R. 269, 376 n.8 (Bankr. E.D. Va. 1998)). Other factors which may be examined to determine whether a creditor's actions warrant punitive damages include: whether or not a simple mistake was the cause of the violation; whether the creditor stopped collection efforts immediately once it was notified of its error; whether the creditor is a sophisticated party; whether the stay violation is a pervasive practice of the creditor and punitive damages are needed to correct the problem; and the number of times the stay was violated. See In re Mitchell, No. 08-8448-AJM-7, 2009 WL 301910 at *4 (Bankr. S.D. Ind. 2009); In re Gorringe, 348 B.R. 789, 792, 795 (Bankr. D. Idaho 2006) (noting the fact that the creditor apparently inadvertently did not follow its own procedures and stopped collection efforts as soon as the error was discovered); In re Cullen, 329 B.R. at 58 (recognizing "[t]he creditor's status as a sophisticated player in the credit industry" as a relevant factor in awarding punitive damages, as well as whether or not the creditor's actions were a pervasive practice for the creditor); In re Bivens, 324 B.R. 39, 43-44 (Bankr. N.D. Ohio 2004) (considering the excuse for the collection efforts and the sophistication of the creditor as relevant factors).

State law standards may also be applied to determine whether punitive damages are appropriate. In Iowa, "any award of punitive damages must be tested by examining (1) the extent and nature of the outrageous conduct, (2) the amount necessary to deter such conduct in the future, (3) the relative size of the punitive damages award as

compared to actual damages and, (4) surrounding circumstances bearing on the relationship of the parties." Hamilton v. Mercantile Bank of Cedar Rapids, 621 N.W.2d 401, 407 (Iowa 2001).

GEMB has not responded to the Debtors' allegations of the stay violation. RMSC as its agent has urged a finding that the stay was not violated. To argue that the Debtors should bear the burden of proof to explain the data under the control of GEMB and RMSC expands the Code's requirements for proving a stay violation. In spite of the position taken by RMSC, the correspondence sent to the Debtor post-petition does not delineate a generational designation of "Senior" or "Junior." The record is void of any evidence to substantiate the claim of RMSC as to the Debtor's legal name, the actual name contained on the original application, and why it concludes that the Debtor's son is the account holder.

RMSC's procedure is to remove debtors from its collection list only if the social security number on the bankruptcy filing matches the number on the account, even if there are other matching criteria.[2] Even if GEMB relies upon RMSC under their service agreement to provide assistance in bankruptcy filings, it is accountable for its collection actions in violation of the stay. When a creditor's agent is informed repeatedly that the person from whom they are trying to collect has filed bankruptcy, and this information is ignored without considering computer error or initiating follow up with Debtors' counsel, the result can be characterized as egregious misconduct. The failure to take any initiative to check the accuracy of the database's information rises to the level of total disregard of

---

[2] A social security number was not utilized in the match for Ethel Anderson because that data had not been included in the account information due to her status as a secondary account holder. Curiously, even though Ethel Anderson did not have a social security number match from the system inquiry, apparently GEMB could conclude that Ethel filed for bankruptcy and no further contact was initiated with this joint debtor.

the Debtor's rights.  In light of the conduct of GEMB and its agent, and considering the fact that each are involved in an extremely large volume of bankrupt accounts, and both are sophisticated in the industry, an award of punitive damages is appropriate.  Punitive damages are awarded in the amount of $10,000.

## CONCLUSION

Based upon the foregoing it is hereby ORDERED that GEMB is assessed actual damages in the amount of $1,000; Attorney fees in the amount of $2,720; and Punitive Damages in the amount of $10,000.  Damages and attorney fees shall be paid to the Debtor, Richard T. Anderson, in care of his attorney within 30 days of the date of this Order.

/s/ Anita L. Shodeen
Anita L. Shodeen
U.S. Bankruptcy Judge


Parties receiving this Memorandum of Decision from the Clerk of Court:
Electronic Filers in this Chapter Case